Corrine Ann SMITH, Robert Earl Smith, and Group Health Inc., Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. Civ. 4–86–744.

United States District Court,
D. Minnesota,
Fourth Division.

Dec. 8, 1987.

James A. Karigan, William N. Lutz, Robins, Zelle, Larson & Kaplan, Minneapolis, Minn., for plaintiffs.

Jerome G. Arnold, U.S. Atty., and James E. Lackner, Asst. U.S. Atty., Minneapolis, Minn., for defendant.

MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on defendant's motion to dismiss for lack of sub-

ject matter jurisdiction or in the alternative for summary judgment. Defendant's motion for summary judgment will be granted.

FACTS

Plaintiff Corrinne Smith and her husband plaintiff Robert Earl Smith are residents of Minneapolis, Minnesota. Plaintiff Group Health Inc. is a corporation also located in Minneapolis. At all relevant times, Group Health provided medical care coverage to Corrinne Smith. In this action, plaintiffs have brought suit against the United States under the Federal Tort Claims Act (FTCA) seeking compensation for injuries allegedly suffered due to the negligence of government employees.

Under the National Housing Act, the Department of Housing and Urban Development (HUD) provides mortgage insurance to institutional lenders that supply financing for low income home buyers. In the event of a default by the borrower, HUD pays the mortgage insurance proceeds to the lender and assumes ownership of the property. Although HUD is the record owner of the property, HUD vests responsibility for supervision and maintenance of the property in an area management broker (AMB) pending sale of the property. Through a contract between the AMB and HUD, and an AMB handbook, HUD provides detailed guidance concerning the care of its properties.

In August of 1984, due to the default of a borrower, the Federal National Mortgage Association tendered title to a house located at 1108 98th Avenue North in Maple Grove, Minnesota to HUD in exchange for mortgage insurance proceeds. HUD then assigned its local AMB, North Star Realty Services (North Star), to take possession of, clean, secure, and maintain the house. As required, North Star inspected the property for defects but reported to HUD that none were found. In order to facilitate the sale of the property, real estate agents were permitted to visit and inspect the house at will (through a lock box system) for the purpose of offering the house to prospective buyers.

Plaintiff Corrinne Smith, a real estate agent, saw an advertisement indicating that the subject property was available for sale. Ms. Smith and her husband, plaintiff Robert Earl Smith, went to the house to inspect it with a view to offering it to potential buyers. Corrinne and Robert Smith entered the house on a lower level and went up the stairs to inspect the upstairs area. After viewing the upstairs, Ms. Smith descended the stairway, but on the way down she allegedly slipped on a loose plastic runner and fell, injuring her right knee. Thereafter plaintiffs commenced this suit.[1] Plaintiff Corrinne Smith seeks damages for the injury she suffered to her knee. Plaintiff Robert Smith seeks damages for loss of consortium due to his wife's injury. Plaintiff Group Health provided or paid for medical care necessitated by Corrinne Smith's injury and seeks to recover the value of this care through a subrogation clause in its membership contract with Ms. Smith.

Defendant United States moves the Court for dismissal of the action for lack of subject matter jurisdiction or in the alternative summary judgment. Defendant argues that any negligence on the part of North Star that may have led to Corrinne Smith's injury may not be redressed in federal court under the FTCA because North Star was an independent contractor and as such its employees were not government employees within the meaning of the FTCA. In response, plaintiffs argue that North Star was not acting as an independent contractor. Plaintiffs further argue in the alternative that even if North Star was an independent contractor, the United States cannot escape liability because the responsibility of keeping the property safe was a nondelegable duty under Minnesota law.

DISCUSSION

■ Defendant has styled its motion as one for dismissal for lack of subject matter

---

**1.** Plaintiffs have also filed suit in state court seeking recovery for the same injury alleged in the case at bar.

jurisdiction or in the alternative for summary judgment. It is true that if the Court finds the FTCA to be inapplicable, arguably no federal question would exist and the Court would not possess subject matter jurisdiction. However, in a case such as this where the jurisdictional facts are intertwined with the merits of the substantive claim, courts have held that the better approach is to assume jurisdiction exists and to proceed with a determination of the merits under a summary judgment analysis. *See* 2A *Moore's Federal Practice* par. 12.-07[2.–1].

A movant is not entitled to summary judgment unless the movant can show that no genuine issue exists as to any material fact. Fed.R.Civ.P. 56(c). In considering a summary judgment motion, a court must determine whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed. 2d 202 (1986). The role of a court is not to weigh the evidence but instead to determine whether, as a matter of law, a genuine factual conflict exists. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). In making this determination, the Court is required to view the evidence in the light most favorable to the nonmoving party and to give that party the benefit of all reasonable inferences that can be drawn from the facts. *AgriStor Leasing*, 826 F.2d at 734. When a motion for summary judgment is properly made and supported with affidavits or other evidence as provided in Fed.R.Civ.P. 56(c), then the nonmoving party may not merely rest upon the allegations or denials of the party's pleading, but must set forth specific facts, by affidavits or otherwise, showing that there is a genuine issue for trial. *Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc.*, 824 F.2d 582, 585 (8th Cir. 1987). Moreover, summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

The FTCA is a limited waiver of sovereign immunity which subjects the federal government to liability for certain torts of federal employees acting within the scope of their employment. *United States v. Orleans*, 425 U.S. 807, 813, 96 S.Ct. 1971, 1975, 48 L.Ed.2d 390 (1976). Specifically, the FTCA covers injuries

> caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). The FTCA defines government employees to include officers and employees of any federal agency "but does not include [employees of] any contractor with the United States." 28 U.S.C. § 2671. Thus employees of independent contractors are not government employees under the FTCA. Because the FTCA provides a *limited* waiver of sovereign immunity, exceptions to the limited waiver, such as those relating to independent contractors, must be respected. *See Soriano v. United States*, 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957) ("limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied").

In determining whether a party is an independent contractor, the Court is obliged to apply federal law. *See Logue v. United States*, 412 U.S. 521, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973); *Cavogos By and Through Cazvasas v. United States*, 776 F.2d 1263 (5th Cir.1985). Under federal law, the primary criterion for judging independent contractor status is whether the government " 'control[s] the detailed physical performance of the contractor.' " *Orleans*, 425 U.S. at 814, 96 S.Ct. at 1976, *quoting Logue*, 412 U.S. at 528, 93 S.Ct. at 2219. In the case at bar plaintiffs argue that HUD controls the performance of its

AMB North Star. Plaintiffs' main support for this argument comes from numerous citations to the AMB handbook and the parties' contract; plaintiffs contend that the detailed instructions contained in these documents demonstrate that HUD is immersed in the details of North Star's day-to-day operations. Under the Supreme Court's decision in *Orleans*, however, detailed regulation is not sufficient to convert an independent contractor into a government employee. As the Court stated in *Orleans*, 425 U.S. at 816, 96 S.Ct. at 1976, although "the Government may fix specific and precise conditions to implement federal objectives ... such regulations are aimed at assuring compliance with goals ... [and] do not convert the acts of entrepreneurs—or of state governmental bodies—into federal governmental acts."

In addition to the authority provided by *Orleans*, several other courts have reviewed the same handbook and contract as before the Court in the case at bar; all these courts found the AMB to be an independent contractor. *See, e.g., Crippen v. United States*, 572 F.Supp. 87 (E.D.N.Y. 1983); *Aetna Life and Casualty Insurance Co. v. United States*, 508 F.Supp. 298 (N.D.Ill.1981); *Harris v. United States*, 424 F.Supp. 627 (D.Mass.1976). For example, in *Aetna*, plaintiff brought suit alleging that an AMB negligently supervised a HUD acquired property. The HUD property burned down and damaged a neighboring building insured by plaintiff. The court in *Aetna*, 508 F.Supp. at 301, reviewing the same AMB contract language present here, declared the AMB to be an independent contractor and granted summary judgment in favor of the government. The court specifically held that under the AMB contract, HUD did not control the detailed physical performance of the AMB. *Id.* Similarly, in *Harris* the court refused to impose liability on the government for the injuries suffered by a tenant in a HUD owned/AMB managed building which resulted from a fall on a defective stairway. 424 F.Supp. at 631. The Court views these cases as persuasive authority and thus finds that North Star is an independent contractor whose negligent acts do not subject the government to liability.

■ Although the Court finds North Star to be an independent contractor, plaintiffs contend that the government nonetheless is liable because the duty to properly maintain the HUD property was a nondelegable duty under the law of Minnesota. Citing *Doby v. Bergstedt*, 267 Minn. 244, 126 N.W.2d 242 (1964), plaintiffs argue that under Minnesota law, property owners have a nondelegable duty to maintain their property in a reasonably safe condition. Under this duty, the property owner remains liable even if the negligent actor was an independent contractor. *Id.* at 248–49. The result sought by plaintiffs, however, is precluded by case law interpreting the FTCA. As stated by the Supreme Court in *Laird v. Nelms*, 406 U.S. 797, 799, 92 S.Ct. 1899, 1900, 32 L.Ed.2d 499 (1972), the FTCA "precludes the imposition of liability if there has been no negligence ... on the part of the Government." Thus in *Laird* the Supreme Court held that strict or vicarious liability could not be imposed on the government under the FTCA. This idea was taken further in *Dumansky v. United States*, 486 F.Supp. 1078, 1093 (D.N.J. 1980), where the court expressly held that, because it is a form of strict or vicarious liability, "the doctrine of nondelegable duty ... cannot impose liability on the Government under the FTCA." Similarly, the court in *Aetna*, 508 F.Supp. at 301, ruling on liability based on an AMB contract, stated that the acts of an independent contractor cannot result in government liability under the FTCA even under a nondelegable duty theory. The Court finds, based on the foregoing, that the United States is not responsible for North Star's alleged negligent acts under the FTCA.

Based on the foregoing and on review of all the files, records, proceedings and argument of counsel,

IT IS ORDERED that defendant's motion for summary judgment is granted.

LET JUDGMENT BE ENTERED ACCORDINGLY.